Morning. I'm James Laughlin, and I represent the appellant Shaun King. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal. This appeal raises three sentencing issues. The first issue concerns the District Court's procedural error in applying a four-level adjustment, even though the preponderance of the evidence in the record did not establish that Mr. King possessed at least 300 images that met the statutory definition of child pornography, who said that he counted the images and there were 308 of them, which is just at the borderline between the three-level and four-level  Robert R. Reilly Yes, I wish, you wish it were at the border. It's just above the border. Shaun King It is. It's just above the border. Not too many images would bump him down. Robert R. Reilly Exactly. Shaun King The record doesn't really tell us much about the FBI agent, what his experiences is, how many child pornography cases he's worked on, whether he's been trained how to determine what images are and aren't child pornography. And this is significant because images that fall around the borderline of child pornography are often hard to classify for two reasons. First one is, the most far-reaching end of the definition for child pornography requires there to be a lascivious exhibition of a child's pubic area. And this Court, by adopting what's been called the DOST factors, has recognized that a exhibition is lascivious or not. So that's one of them. Similarly, even when an image is obviously pornography, it's not always clear that the person in it is a minor, somebody under the age of 18 as opposed to somebody slightly older at the age of 18 that looks younger. Both of these borderline issues require a careful inquiry by a neutral fact finder to determine whether any given image constitutes child pornography. But that didn't happen here. We may not know much about the FBI case agent, but we know that he wasn't unbiased. I'm not saying that the case agent did anything wrong. I'm saying he's part of the case. But even after Mr. King objected to the four-level adjustment, neither the District Court nor the Probation Office ever looked at the images for themselves. The District Court simply imposed the four-level adjustment based entirely on the Probation Officer's conclusory allegations about her involvement. I think both. And I think that strength on one of those prongs would kind of relieve the necessity for more detail on the others. But if the Court looks at the others, you can look at them and if you take those at face value and if there's no reason to believe that those aren't accurate descriptions, you'd say, okay, these amount to child pornography. The problem is those other hundred or so images where we don't have descriptions like that. And so there's no way to know. And in fact, pointing to the pre-sentence report again, the Court may notice that the case agent did distinguish between child pornography and said, but there's other things on there that's child erotica. And he said child erotica is where minors were appeared in underwear or in sexually suggestive clothing. Now, to me, that's disturbing because it suggests that that's maybe where he drew the line. Whereas under the DOS factors, mere nudity isn't enough for a lascivious exhibition. But if the case agent thought that mere nudity was it, there may be images where there's nude children that do not meet the Court's definition of lascivious exhibition. So those are the kind of issues that are potentially floating out there that should have been dealt with once Mr. King raised his objection to the four-level images adjustment. If it had been bumped down, so if the finding instead had been 308, 290, so we're bumped down below that threshold, what would the guideline range have become? The guideline range would have been 78 to 97 months. But as I pointed out in the reply brief, I don't think, given the Court's rationale for the two-level Booker variance that it gave, I don't see any reason to expect that the Court wouldn't give at a minimum that same two-level Booker variance from the correctly calculated guidelines, which would then drop the post-variance guidelines down to 63 to 78 months. Well, didn't he focus, the judge focus on the factors that he considered as opposed to the more precisely than the actual number of the two-level downward adjustment? I'm sorry. Do you mean, does Your Honor mean the personal factors that he used? The discussion relative to the downward variance focused on the factors that he took into account as opposed to the preciseness of the two-level downward variance. It wasn't the two-level downward variance. Right. That's correct, Your Honor, and that's why I think that they're kind of separate in the Court's conclusions, and therefore there's a very good chance that if this were to be remanded for a one-level reduction, if that's what the images require, the Court, I think, would probably give a two-level, still give a two-level reduction from that. I'd like to, with a little bit of time that I have left, talk about the second issue, which is the, whether or not the 70-month sentence imposed by the District Court is substantively unreasonable under all the circumstances, including the fact that the two-level downward variance would be a one-level reduction, and that's the one I'll be talking about. I think the two-level reduction would be a one-level reduction. I think the two-level reduction would be a one-level reduction. I think the two-level reduction would be a one-level reduction. I think the two-level reduction would be a one- move that's implicating but not limited to the structural defects in the guideline covering possession and child pornography. Even if the Court concludes that resentencing is required because of the number of images adjustment, it should still reach the reasonableness issue for two reasons. The first is that issue definitely will arise again on remand and this Court can properly give guidance to the Court about that. The second reason is that Mr. King has already been in custody for about 30 months, which is equivalent to a 36-month sentence once good time is taken into account. And I think that this Court can and should conclude that any time that Mr. King has already served by the time the Court issues its decision is sufficient but not greater than necessary to serve the goals of sentencing and therefore any greater sentence would be substantially unreasonable. This Court held in the United States v. Omezco-Vasquez that it can find a sentence substantially unreasonable if it has a definite and firm conviction that the District Court committed a clear error of judgment in the sentence it reached upon, weighing the relevant factors. In that case, the Court actually let me skip to discussing this particular guideline. Obviously, I'm not going to go over the history of the guidelines. Again, that's covered in the opening brief, the article attached to the opening brief, and hopefully the Court got my Rule 20HA letter with the Sentence Commission's report. And if you don't mind my saying so, it covered very well in your brief. You did a very nice job. Thank you, Your Honor. But suffice it to say that the typical possession of child pornography offense would have had a base offense level of 12 in 1991. But it now has a de facto base offense level of 30, given all of the enhancements that apply in nearly every case. That's caused many district judges throughout the country to recognize that these guidelines, or the guideline ranges resulting from applying that guideline, are entitled to very little weight when balancing the 3553A factors. And I would encourage the Court to look at it the same way. I don't agree with the government that that's something that's irrelevant to this Court, because the Court, in judging substantive reasonableness, has to perform the same kind of analysis. So it also has to consider the structural flaws. I see that I'm running low on time. Okay. Why don't we hear from the government, and then you will have some time. Thank you. Good morning. May it please the Court, I'd like to first address... And could you state your name for the record? Yes, Your Honor. Anne Gannon on behalf of the United States. Okay. Thank you. I'd first like to address defendant's arguments regarding the number of images. Here, the district court did not abuse its discretion in finding that there was sufficient indicia of reliability to impose the plus four enhancement based on the number of images. Here, what the defendant's asking the Court to do is rule on a moving target. Before the district court, while the defendant did challenge the difference between child pornography and child erotica in essentially one line in a sentencing position, the substance of the challenge before the district court was whether the government had met its burden of proof and had set forth its challenge in that manner. To which, the probation officer correctly conducted an additional investigation, went back, spoke again with the case agent, addressed those concerns in the addendum to the pre-sentence report, and the district court was satisfied that the objection was not proper and ruled against it. Now, what defendant's trying to do is challenge more the substance of the pictures, what exactly it was that they depicted. Here, the probation officer is indicating the addendum that he discussed the issue at length with the case agent. The case agent recognized the statutory definition of child pornography. The agent was asked to count only the images that were clearly child pornography versus child erotica, which that distinction alone indicates that the case agent understood that there was a difference. The case agent personally viewed the images and set forth its criteria for determining whether it was a child based on the overall body size and the existence or lack of sexual development. Furthermore, the case agent articulated that it was a lascivious exhibition of the genitals or sex acts that would constitute child pornography. But this was based solely on the probation officer's representation of what the case agent had done, correct? That's correct, Your Honor, but this exists in many different types of cases, not just child pornography. For example, in a fraud case, the probation officers often have to rely on forensic accounting done by the FBI or, say, a receiver in an SEC type case. And so, absent specific objections to the criteria used or to the underlying facts, the district court needs to rely on that probation officer's role as an officer of the court. And here, the probation officer was satisfied, articulated its reasons, and the district court was satisfied as well. Otherwise, you'd have district courts having to go through, without any specific challenge, math resulting in loss in a fraud case. Here, while the government acknowledges the burden of proof and embraces that burden, the defendant did not raise a single objection to a specific image, saying, this image is child erotica, not child pornography. Under 3509M, the government has an affirmative obligation to allow the defendant at any time, within reason, to view those images. And here, the defendant did not do that. How did Mr. King come to the attention of the authorities? I looked and I couldn't see it. Your Honor, he came to the attention through a separate investigation outside the state of California in which an individual was apprehended with child pornography, and through that investigation, it was determined that he had been trading child pornography with somebody on America Online with the, I believe it was, the screening was something like Little Fun One. And based on that information, search warrants were executed on the AOL accounts with Little Fun One, which led to Educate Guy. And subsequently, it was determined that those screenings belonged to Defendant Sean King. So it came to law enforcement's attention through that matter. In fact, through the distribution of the images, which is one of the factors that the district court seemed particularly concerned with. So for all of these reasons... Was the evidence of distribution primarily that beginning that you just described, that they knew that he had distributed to somebody else? Yes, Your Honor. In addition, some of the child pornography, I believe still images and videos, were recovered pursuant to the AOL search warrant in a folder called Educate Guy Sent. So it was an email account that indicated different folders based on messages received or sent. And some of them were found in that Sent folder, which would also be in Disha. Furthermore, the defendant acknowledged in his interview that he had distributed child pornography on multiple occasions. So this was not a one-time incident. What's your response to the very lengthy material in the brief and then the article attached to the brief? The argument being that the sentences for child pornography are greatly in excess of what the guidelines punish as even actual sexual abuse. Do you care to defend the guidelines once that comparison is brought forward? Or do you care to defend the sentence imposed once that comparison is brought forward? Yes, Your Honor. The guidelines are the result here of primarily congressional directives. This distinguishes the child pornography guideline from the crack, powder cocaine guideline. Do you think... No, I want to be more specific than that. Do you think that the behavior here, possession of and exchanging of child pornography, warrants more severe punishment from actual sexual abuse of a minor? Which I gather from under the guidelines is what happens. It can happen, Your Honor, and I acknowledge that. I think in certain circumstances and in many cases, yes, because of the prolonged nature of the activity. The fact that... So I'm going to make sure I understand you. You say actual sexual abuse of a minor, including penetration of a male for an underage female, is less deserving of long punishment than possession of child pornography and exchange of child pornography with no showing of any contact with any actual minor. Is that what you're saying? I think in certain circumstances it could. I'm not saying in every case that it should. But I think that given the nature of child pornography, given the extent of the collections that exist and must exist in order for the guidelines to get that high, in terms of the nature of the images, the age of the children depicted, that in certain circumstances it can be as serious. And I think most importantly in this case is that Congress has decided that that's what the penalty should be. While there were a few of the specific offense characteristics that were set by the commission, the vast majority of the increases in the child pornography guidelines were directly the result of congressional directives to the commission. Well, yes, to the commission. Congress can put mandatory minimums on, and there's nothing anybody can do about it. If Congress simply sets an offense level for guidelines, and we have guidelines that are not mandatory, is that anything more than just a sort of a sense of Congress? I mean, it doesn't bind anybody, does it? Well, I think to the extent it binds the district courts, the district courts have to, as this Court has said, consider that range as the starting point for determining a reasonable sentence. It could disagree with Congress. And importantly, that's not the case here. This is very different from Kimbrough, because here the district court did not have a policy disagreement. So it's not an abuse of discretion whether there was a policy disagreement. The court, as Kimbrough noted, has the discretion to have a policy disagreement or not. And here the district court procedurally, the record shows, understood the argument and decided that it did not have a policy disagreement fundamentally with the guidelines. I think what's also important is that this district court understood its role. It considered all the facts and varied two levels downward under Booker, because it understood its role. It did not feel bound by the guidelines in that sense. The comment I'm about to make goes well beyond this case. Of course, we see a lot of child pornography cases. And in the range of child pornography cases that I've seen coming before panels that I've sat on, this, while a fairly long sentence, is a lot shorter than a lot of other sentences I've seen. It ends up, in practical fact, that there's a huge amount of variance from one district to the other, huge amount of discretion in the U.S. Attorney's offices. So, for example, the U.S. Attorney's office in Montana seems to be particularly vigorous in prosecuting child pornography cases, and they often succeed in getting exceedingly long sentences. Whereas you might find a different U.S. Attorney with a different policy or different judges. This strikes me as almost the antithesis of an orderly system of justice, whatever I might think about the appropriate length of sentence. There's something that's just seriously gone wrong with the system here with respect to child pornography sentences. And I agree, Your Honor. I think that's seen from some of the district court decisions regarding this issue, that sentencing courts vary widely in how they view this offense. Well, and U.S. Attorney's offices vary widely. And you may or may not be in a position to control district judges. They're somewhat difficult to control, even by courts of appeal judges. But the U.S. Attorney's offices are in a position to develop some consistent guidelines among themselves and so on, and they have not done so. Yes, Your Honor. I understand the concern. I think that there are attempts to, you know, standardize the practices. But Your Honor is correct. There is an enormous difference. And the district courts have the discretion to try to balance that out if they feel that that is appropriate. But here, the district court did not abuse its discretion in finding that there was no invidious distinction, such as there was in Kimbrough. And the fact that the guidelines were amended in large result resulting from congressional directives, which the district court was not free to purely ignore the district court's sentence of 70 months, was both procedurally and subjectively reasonably and should be affirmed. I guess when you're asked about why these sentences have gotten so high and what is Congress thinking, the usual explanation for this is that they are trying to kill the market for the people who are producing this and actually doing the abuse. But I don't hear much of that in the justification. People say, well, it's worse to have 500 images than 300 images because it's somehow more blameworthy. And it seems to me the real answer is that, well, maybe that's helping the market or something like that. But I see less and less justification in terms of the market because if you're just trying to kill the market, you can probably do that with a three-year sentence instead of, as I saw in one case, a 300-month sentence of a 65-year-old. Yes, sir. I think that there is the issue with regard to the market and production and interest in the material and new material driving the market. I think the fact that there's this step increase based on the number of images also reflects the harm done to the children. The fact that every single time these images are viewed, that child is being re-victimized. This child, when they grow up and realize what's happened to them, they have to walk around the street knowing that their image has been seen by hundreds, if not thousands, of people. There is a quantifiable harm there that I think Congress was also trying to address. And the Supreme Court noted in New York v. Ferber that the harm to the child is an important sentencing factor beyond, say, market forces. I think it also shows the commitment of the offender to the type of content. The larger the collection, the more time spent acquiring it, and maybe the more concern about the seriousness of the offense and need to protect the public. I still would think that the harm to the child is in the event. And there may be some additional harm from having that broadcast, but it seems to me the real harm that we ought to be trying to get at is the original violation. I think that's the primary harm. But, you know, for example, Your Honor, respectfully, if one of these children went into a job interview and wouldn't know if that person who they're interviewing with recognizes them from an image that, you know, was taken when they were 12 or 13 years old. I mean, that constant fear is, I think, an important harm that the Commission recognized in developing the guidelines. Ms. Gannon, if we find that the image's inquiry was insufficient in this case or ineffective, can we still assume that the sentence would have been 70 months? Or should there still be a two-level downward variance from what would be a lower guideline range? Your Honor, to be honest, I think it's difficult to say what the district court would do upon remand in that situation. I think the district court did look at this case holistically. So I think there's certainly a possibility that it would reimpose the 70-month sentence, especially given its awareness that the number of images was relatively close to the cutoff point at 308. I would note just that the three videos, which are not disputed, I believe, would, at 75 images apiece, would equal 225. So putting the still images aside that seem to be in dispute, the defendant would be solidly within that other range. I see that I've gone significantly over my time, so unless the court has any questions... No, it was we who took you over. Thank you. Thank you. Thank you. I just have two points. First, with regard to counsel's suggestion that Mr. King didn't properly raise his challenge to the number of images adjustment, I'd like to point the court to the sealed excess of record at page 31. And there's a paragraph where it's pretty clear that he says specifically, there's no evidence that the agent knows how to determine what isn't child pornography, and therefore there's no evidence in the record as it stands now to support that. And I don't think anything that happened in the addendum to the pre-sentence report changed that. With regard to the comment the prosecutor made about Congress making changes to the guidelines and the court's not free to ignore that, I don't disagree with that up to a point. I mean, Congress clearly has powers in setting sentences. It's set the stat max in this case. In other cases, there's no mandatory minimum here, but it sets mandatory minimums. And it does have the power to direct the Sentencing Commission to say, hey, we want you to do this, this, and this. But what the Supreme Court recognized in Kimbrough is that the value of the sentencing guidelines as a useful tool that will provide a range that is reasonable in the mine run of cases, becomes diluted once those guidelines are no longer the product of the Commission's traditional role, meaning using empirical evidence and compiling national experience. So that's the problem we have. Unless the Court has any further questions, I'd submit. Okay, thank both sides for your arguments. United States v. King, now submitted.
judges: Tunheim, Canby, Fletcher W.